UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CHRISTINA E. S.,[1] | Case No. 2:19-cv-00557-JDE |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| ANDREW M. SAUL,[2] Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Christina S. ("Plaintiff") filed a Complaint on January 24, 2019, seeking review of the Commissioner's denial of her application for disability insurance benefits ("DIB"). The parties filed a Joint Submission ("Jt. Stip.") regarding the issues in dispute on January 23, 2020. The matter now is ready for decision.

---

[1] Plaintiff's name has been partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Andrew M. Saul, now Commissioner of the Social Security Administration, is substituted as defendant for Nancy A. Berryhill. See Fed. R. Civ. P. 25(d).

# I.
# BACKGROUND

On August 27, 2015, Plaintiff filed an application for DIB alleging disability starting on April 2, 2015. AR 15, 32. On November 20, 2017, after her application was denied initially and on reconsideration (AR 88-91, 94-96), Plaintiff, represented by counsel, testified before an Administrative Law Judge ("ALJ"), as did Plaintiff's husband and a vocational expert ("VE"). AR 29-63.

On February 14, 2018, the ALJ found Plaintiff was not disabled. AR 15-21. The ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged-onset date and found she had severe impairments of Chiari malformation[3] and hip bursitis. AR 17. The ALJ also found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment and had the residual functional capacity ("RFC") to perform a light work[4], except: (1) frequently push/pull with the right lower extremity; (2) occasionally reach overhead with the bilateral upper extremities; (3) occasionally climb ramps/stairs; (4) occasionally balance, stoop, kneel, crouch, crawl, climb ladders, ropes, and scaffolds; and (5) avoid concentrated exposure to extreme cold, heat, vibrations. AR 17-18.

---

[3] "Chiari malformation is a condition in which brain tissue extends into the spinal canal due to an abnormally small or misshapen skull." Johnson v. Saul, 2019 WL 4747701, at *4 (E.D. Cal. Sept. 30, 2019).

[4] "Light work" is defined as
> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b); see also Rendon G. v. Berryhill, 2019 WL 2006688, at *3 n.6 (C.D. Cal. May 7, 2019).

The ALJ further found Plaintiff, 42 years old on the alleged disability onset date, was a "younger individual" who could not perform her past relevant work as a cashier/checker (Dictionary of Occupational Titles ["DOT"] 211.462-014). AR 20. However, considering her age, education, work experience, and RFC, the ALJ found she could successfully adjust to other work existing in significant numbers in the national economy, including to the positions of case aide (DOT 195.367-010), bakery conveyor line (DOT 524.687-022), and children's attendant (DOT 349.677-018). AR 21. Thus, the ALJ concluded Plaintiff was not under a "disability," as defined in the Social Security Act, through the date of the decision. AR 21. Plaintiff's request for review of the ALJ's decision by the Appeals Council was denied, making the ALJ's decision the agency's final decision. AR 1-6. This action followed.

## II.

## LEGAL STANDARDS

### A. Standard of Review

Under 42 U.S.C. § 405(g), this court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or

reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless (Molina, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

**B. Standard for Determining Disability Benefits**

When the claimant's case has proceeded to consideration by an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Molina, 674 F.3d at 1110.

First, the ALJ considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." Id. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015). If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from her impairments. See 20 C.F.R. § 404.1520(a)(4); Social Security Ruling ("SSR") 96-8p.

4

After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform her past relevant work, either as she "actually" performed it when she worked in the past, or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016). If the claimant cannot perform her past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, she is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See id. at 1099.

The claimant generally bears the burden at each of steps one through four to show she is disabled, or she meets the requirements to proceed to the next step; and the claimant bears the ultimate burden to show she is disabled. See, e.g., Molina, 674 F.3d at 1110; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). However, at Step Five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

### III.
### DISCUSSION

The parties present three[5] disputed issues (Jt. Stip. at 4):

Issue No. 1: Did the ALJ properly consider Plaintiff's subjective testimony;

---

[5] The Court reorders the issues as presented by the parties to track the ALJ's decision and the five-step analysis. Also, although parties present the challenge to the testimony as a single issue, it addresses two witnesses reviewed under different standards. Accordingly, the Court addresses them separately.

5

Issue No. 2: Did the ALJ properly reject third-party witness evidence; and

Issue No. 3: Did the ALJ properly determine Plaintiff was able to perform a significant number of jobs at Step Five.

**A. Plaintiff's Subjective Symptom Testimony**

In Issue No. 1, Plaintiff argues the ALJ improperly discounted her subjective symptom testimony. Jt. Stip. at 17-24.

**1. Applicable Law**

Where a disability claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, absent evidence of malingering, the ALJ must provide "'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the severity" of the symptoms. Treichler v. Comm'r Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (citation omitted); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude that the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Id. at 885 (citation omitted). But if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the Court's role to "second-guess" it. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Finally, the ALJ's credibility finding may be upheld even if not all the ALJ's reasons for rejecting the claimant's testimony are upheld. See Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004).

**2. Analysis**

At the November 2017 hearing, Plaintiff testified she completed high school and some college. AR 32. She worked as a grocery store cashier for 25 years. AR. 32-33. In April 2015, her arm "stopped working," caused in part by Chiari and a bulging disk that impinges on her spinal cord. AR 33. In May

2017 she had a successful cervical fusion but could not return to work as she still had problems from the Chiari. AR 33. She described continuing weakness "off and on" in her arms, legs, and feet, swelling and burning in her feet when sitting, blurry vision when bending her neck, cervical pain up to four times per week, and hearing that at times goes quiet. AR 34, 42-43, 48-49.

Plaintiff advised that her doctors recommend surgery for Chiara, but she declined because she recovered poorly after her last surgery, and it is not guaranteed to work. AR 36, 50, 53. She tried physical therapy, acupuncture, a TENS Unit, and a brace, but none helped. AR 50-51. She tried Norco and Valium, but they caused hallucinations and diarrhea. AR 53. She had vein surgery in her legs in 2017, but it did not help, as her condition was neurological. AR 38. She had cortisone shots in her hip and a fluoroscopy, takes Tylenol or Motrin for inflammation without ill effects, ices the base of her brain, lays down, and elevates her legs. AR 38-39, 42, 47-49, 51, 53-54.

She lives with her husband and three boys. AR 39, 45. She has a driver's license and still drives. AR 46. She or her husband take the kids to school. AR 39. The children are involved in sports, and when she attends their games she sits in a special chair. AR 39-40. Cooking is a group effort around the house. AR 40. She does not need help getting dressed, or in the bathroom, shower, or toilet. AR 41. She leaves the house once or twice a day. AR 41. She has trouble using the stairs in her house, so she mostly stays downstairs. AR 46, 49, 54. She can stand and sit about an hour, and she can walk about a block. AR 43-44. She can lift three to four pounds. AR. 43-44.

The ALJ summarized Plaintiff's hearing testimony and found her medically determinable impairments could reasonably be expected to cause her alleged symptoms, but her statements "concerning the intensity, persistence[,] and limiting effects of [the] symptoms" were not entirely consistent with the medical evidence and other evidence in the record. AR 18-19. Specifically, the

ALJ found: (1) Plaintiff's testimony was not fully supported by objective findings; (2) after her cervical fusion, Plaintiff received conservative treatment; and (3) there was no opinion from a treating or examining physician supporting disability.[6] AR 19.

As explained below, the ALJ provided legally sufficient reasons for discounting Plaintiff's subjective-symptom complaints.

First, the ALJ found the medical evidence was not entirely consistent with Plaintiff's statements. AR 19. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in [her] credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005); see also Rollins, 261 F.3d at 857. For example: (1) after Plaintiff's cervical discectomy in May 2015, records show good results and grossly normal physical exam at later visits (AR 19, 292, 372 (follow-up exam stating Plaintiff "is an alert, cheerful lady in no acute distress"), 588, 590 (follow-up describing "excellent surgical outcome," full range of motion, no neck pain, and full strength), 591 (follow-up stating Plaintiff healed well, no evidence of instability), 592 (follow-up exam indicating full strength and range of motion but noting subjective pinching and neck pain from intervening July 2015 car wreck); (2) the doctor provided no recommendation for specific treatment other than continued follow-up (AR 19, 375-76, 592); (3) August

---

[6] Before the Appeals Council, Plaintiff did not challenge the ALJ's assessment of her testimony. AR 151-54. In the joint submission here, she addresses the first and second reasons in a cursory fashion (Jt. Stip. at 19-22), briefs a reason not relied upon by the ALJ (Jt. Stip. at 23-24 (daily activities)), and does not acknowledge the third reason. The Court may take a Plaintiff's failure to address aspects of the ALJ's reasoning in this regard as a waiver of a challenge to those aspects. Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006) (claimant waived issues not raised before the district court); Owens v. Colvin, 2014 WL 5602884, at *4 (C.D. Cal. Nov. 4, 2014) (claimant's failure to discuss, or even acknowledge, ALJ's reliance on certain reasons waived any challenge to those aspects of ALJ's finding).

2016 imaging showed stable pathology, and physical exam showed normal strength in the upper extremities (AR 19, 650, 701); (4) regarding weakness, Plaintiff reported she had only "some" weakness in her foot, but her gait was normal and her strength was symmetric (AR 19, 564-65, 701 (Plaintiff reports she is "functionally and symptomatically stable"); and (5) electromyography findings in August 2017 were "unremarkable," showing no evidence of cervical radiculopathy or other neuropathies of the upper extremities (AR 19, 680). The ALJ properly considered the inconsistency between the medical evidence and Plaintiff's subjective symptom complaints as one of at least three valid factors supporting the decision. See Burch, 400 F.3d at 681.

Second, after the cervical fusion, Plaintiff's physicians responded with conservative treatment.[7] (AR 19, 591 (physical therapy referral), 710 (treating physician stating he will "proceed with conservative care" and implement "nonoperative treatments"). Indeed, at the hearing Plaintiff admitted she managed her condition with only Tylenol,[8] Motrin,[9] icing, and lying down. AR 38, 42, 47-49, 51, 53-54. An ALJ may properly discount symptom testimony at odds with conservative treatment. See Hanes v. Colvin, 651 F. App'x 703, 705 (9th Cir. 2016) (credibility determination supported in part by evidence of conservative treatment consisting primarily of minimal

---

[7] Contrary to Plaintiff's assertion, the ALJ did not label Plaintiff's surgery conservative. See Jt. Stip. at 21. Instead, the ALJ found: "<u>After</u> [Plaintiff]'s cervical fusion, [Plaintiff]'s physicians only responded with conservative treatment, which is strong evidence that [Plaintiff]'s symptoms were not as serious or bothersome as now alleged." AR 19 (emphasis added).

[8] Medel v. Colvin, 2014 WL 6065898, at *8 (C.D. Cal. Nov. 13, 2014) (Tylenol is conservative treatment).

[9] Pruitt v. Astrue, 2012 WL 2006150, at *2 (C.D. Cal. June 5, 2012) (Motrin is conservative treatment).

9

medication, limited injections, physical therapy, and exercise); Lindquist v. Colvin, 588 F. App'x 544, 547 (9th Cir. 2014) (ALJ properly discounted claimant's testimony in part because symptoms controlled by medication); Vasquez v. Comm'r of Soc. Sec., 2017 WL 4181089, at *3 (E.D. Cal. Sept. 20, 2017) (ALJ properly relied on Plaintiff's conservative treatment of medication, lying down, and physical therapy, in discounting subjective complaints).

Third, and finally, the ALJ properly noted that there was no opinion from any treating or examining physician indicating Plaintiff was completely disabled from all work activity, or that she even has permanent limitations greater than those assessed by the ALJ. AR 19; Willens v. Berryhill, 709 F. App'x 867, 868 (9th Cir. 2017) (analysis of subjective complaints upheld in part because "no physician made an assessment that [claimant] was disabled"); Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (substantial evidence supported finding claimant, although impaired, was not disabled and could perform work because "[n]one of the doctors who examined [claimant] expressed the opinion that he was totally disabled").

The Court finds the ALJ provided sufficiently specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony, that is, its inconsistency with the medical evidence, conservative treatment after surgery, and the lack of an opinion supporting disability or more restrictive limitations. Those grounds are sufficient to affirm the ALJ's decision on the issue.

**B.      Third-Party Evidence**

In Issue No. 2, Plaintiff contends the ALJ improperly rejected third-party evidence, arguing the ALJ erred by failing to give full consideration to her husband's testimony. Jt. Stip. at 24.

**1. Applicable Law**

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Bruce v.

Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006)); see also 20 C.F.R. § 404.1513(a)(4). Friends and family members in a position to observe a symptoms and activities are competent to testify as to a claimant's condition. See Diedrich v. Berryhill, 874 F.3d 634, 640 (9th Cir. 2017). Such testimony "cannot be disregarded without comment." Bruce, 557 F.3d at 1115 (quoting Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)); Robbins v. Comm'r Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) ("[T]he ALJ is required to account for all lay witness testimony in the discussion of his or her findings."). When rejecting lay witness testimony, an ALJ must give specific reasons germane for discounting the testimony. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009).

### 2. Analysis

Plaintiff's husband, an accountant, completed a "Function Report-Adult-Third Party" in September 2015. AR 46, 187-95. He explained how Plaintiff is affected by her illness, injuries, and conditions, including stating that she is limited to standing for an hour, cannot walk for long periods, and sleeps on the couch. AR 187-88. He described her activities, including her ability to drive the kids to school. AR 188, 190. He explained that she cooks about a meal a week but usually goes to the drive thru or to lunch with her friends. AR 189, 191. He stated Plaintiff did some laundry, but they needed a house cleaner. AR 189-90. He checked boxes indicating the abilities affected by her illness, injuries, or conditions. AR 192. He said she can lift up to five pounds, described her problems with her vision and neck, and her ability to complete tasks and follow instructions. AR 192, 194. Finally, he stated that she takes Tylenol for her condition with no side effects. AR 194.

Plaintiff's husband also testified at the November 2017 hearing. AR 46, 59-62. He said he does most of the grocery shopping, but his wife will come

with him. AR 59. He reiterated that Plaintiff cooks but stated he cleans up. AR 59. Plaintiff does some laundry, but he folds and takes it upstairs. AR 60. He stated they have a house cleaner, but said he and their sons take out the trash. AR 60. He does the yardwork. AR 60. Plaintiff does not need help getting dressed, or in the shower, bath, or toilet. AR 60. Plaintiff drives and picks up the kids from school, leaving the house twice a day. AR 60. She volunteered at the school until last year. AR 61. He hopes she has surgery again soon, but he said Plaintiff is apprehensive about having it done. AR 62.

In the written decision, the ALJ cited Plaintiff's husband's third-party function report and summarized his hearing testimony. AR 18, 20. The ALJ assigned "little weight" to his statements for the same reason he discounted Plaintiff's testimony. AR 19-20. The ALJ specifically noted that Plaintiff's husband's statements were "cumulative with respect to the allegations by [Plaintiff]," and reiterated that "the objective evidence provides good reasons for questioning the reliability of [Plaintiff]'s subjective complaints." AR 20.

Plaintiff does not dispute that her husband's statements were cumulative of her own testimony.[10] Because the ALJ properly discounted Plaintiff's testimony, and Plaintiff's husband's third-party evidence was merely reflective of that testimony, the ALJ properly assigned it less weight for the same reasons. To the extent Plaintiff contends the ALJ should have provided more rationale for discounting the testimony, any error is necessarily harmless. See Woodmass v. Berryhill, 707 F. App'x 432, 436 (9th Cir. 2017) (even when ALJ fails to provide germane reason for discounting third-party testimony, error harmless where third-party statements provided "essentially the same information" as claimant's properly discounted statements); Zerba v. Comm'r

---

[10] Before the Appeals Council, Plaintiff admitted that her husband's statements "aligned with [her] testimony almost identically[.]" AR 154.

12

of Soc. Sec. Admin., 279 F. App'x 438, 440 (9th Cir. 2008) (no harmful error in ALJ's failure to discuss husband's testimony where it was substantially similar to claimant's own properly discredited testimony); Smith v. Berryhill, 2018 WL 468281, at *5 (D. Or. Jan. 18, 2018) ("It is . . . harmless error when an ALJ ignores portions of lay witness testimony if that testimony is contradicted by other properly credited substantial evidence or cumulative of other testimony that the ALJ properly rejected." (internal quotation marks and citation omitted)).

**C.  Step-Five Determination**

In Issue No. 3, Plaintiff challenges the ALJ's Step-Five determination, claiming it lacks support because she does not have transferrable skills from her cashier/checker position to the alternative case aide position identified by the ALJ, and the ALJ therefore erred by relying on the available jobs for that position in the national economy. Plaintiff further argues that the remaining occupations also do not constitute a significant number of jobs. Jt. Stip. at 5-12. In support, she presents an analysis of several sources not relied upon by the ALJ or the VE, including the SkillTran publication[11], Wikipedia.org, and the Program Operations Manual System ("POMS"). Jt. Stip. 8-10.

**1. Applicable Law**

The Commissioner bears the burden of "show[ing] that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's [RFC], age, education, and work experience." Tackett, 180 F.3d at 1100 (citation omitted). There is no bright-line rule for what constitutes a significant number of jobs. Beltran v.

---

[11] Wendei L. P. v. Comm'r of Soc. Sec., 2020 WL 433365, at *1 (W.D. Wash. Jan. 27, 2020) (describing SkillTran as a manual authored by a private company that purports to rely on the DOT).

13

Astrue, 700 F.3d 386, 389 (9th Cir. 2012). The Commissioner's burden can be met: "(a) by the testimony of a VE, or (b) by reference to the Medical-Vocational Guidelines ['the Grids'] . . . ." Tackett, 180 F.3d at 1101.

The Grids are matrices of "four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." Heckler v. Campbell, 461 U.S. 458, 461-62 (1983). When properly applied, the Grids "render[ ] a conclusion of either 'disabled' or 'non-disabled'" based on the number of jobs "that the Administration has determined exist in significant numbers in the national economy." Barnes v. Berryhill, 895 F.3d 702, 706 (9th Cir. 2018); 42 U.S.C. § 423(d)(1)(A).

When the claimant cannot perform substantially all the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the Grids are used as a "framework" for decision-making, unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations. SSR 83-12, 83-14.

If the claimant is disabled under the Grids, the analysis ends there. See Lounsburry v. Barnhart, 468 F.3d 1111, 1115-16 (9th Cir. 2006). "Under no circumstances may a [VE]'s testimony supplant or override a disability conclusion dictated by the [Grids]." Id. at 1116.

**2. Analysis**

Preliminarily, the Court notes that Plaintiff did not raise this issue below despite an opportunity to do so. Plaintiff was represented by counsel at the administrative hearing and was allowed to pose questions to the VE, but she failed to challenge the VE's methodology for determining the other work she could perform or in calculating the number of estimated jobs. AR 55-57. Plaintiff was also represented before the Appeals Council but did not raise the

issue there, either. AR 151-54; see Hurtado v. Berryhill, 749 F. App'x 663, 664 (9th Cir. 2019) ("[Because claimant], who was represented by counsel at his administrative hearing . . . did not raise [issues regarding his past relevant work], present any evidence, or challenge the [VE]'s testimony at the administrative hearing, those arguments are forfeited."); Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (claimant's argument – that there was insufficient jobs in local area for a particular position – not properly preserved for appeal); Aragon v. Colvin, 2016 WL 1257785, at *4 (C.D. Cal. Mar. 30, 2016) (in addressing argument that SkillTran publication revealed fewer jobs available than identified by ALJ, court noted plaintiff failed to raise any objection at the hearing or ask the VE any pertinent questions about his methodology). Nonetheless, the Court concludes there is no error at Step Five.

Here, as mentioned, the ALJ found Plaintiff was a younger individual, but she could no longer perform her past relevant work as a cashier/checker. AR 20. The ALJ further found that transferability of job skills was not material because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff was "not disabled," whether or not she has transferable skills. AR 20. However, the ALJ noted that the VE testified Plaintiff had acquired transferable skills, and he listed those skills. AR 20.

Next, the ALJ found that if Plaintiff had an RFC to perform the full range of light work, a finding of "not disabled' would have been directed by the Medical-Vocational Rule 202.21. However, because Plaintiff's ability to perform all or substantially all of the requirements of that level of work had been impeded by her limitations, the ALJ consulted the VE to determine whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, transferable skills, and RFC. AR 21. Based on the VE's testimony, the ALJ found Plaintiff was capable of making a successful adjustment to the positions of case aide (11,000 jobs nationally);

15

bakery conveyor line (3,700 jobs nationally); and children's attendant (1,800 jobs nationally). AR 21. Accordingly, the ALJ found Plaintiff not disabled under this framework analysis. AR 21.

Plaintiff has failed to demonstrate error in this determination. During the hearing, the VE outlined Plaintiff's past work, detailed her transferable skills, and, in responding to questions about a hypothetical person matching Plaintiff's limitations, concluded Plaintiff could perform the case aide position. AR 55-56. The VE noted that his testimony was consistent with the DOT and his 27 plus years of experience. AR 57. That testimony is substantial evidence supporting the ALJ's determination and meets the Commissioner's burden. See, e.g., Osenbrock v. Apfel, 240 F.3d 1157, 1162-63 (9th Cir. 2001); Aragon, 2016 WL 1257785 at *4 ("VE testimony, by itself, constitutes substantial evidence when in response to a complete hypothetical."); Migliore v. Colvin, 2013 WL 3935879, at *2 (C.D. Cal. July 29, 2013) (VE's testimony was substantial evidence supporting Step-Five determination because VE "identif[ied] a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy" (quoting Osenbrock)). Moreover, the VE was not required to explain the methodology of how he reached the job numbers. See Aragon, 2016 WL 1257785 at *4; Zalesny v. Comm'r of Soc. Sec., 2014 WL 4418215, at *3 (E.D. Cal. Sept. 5, 2014).

While Plaintiff offers a different analysis under various sources, she has not shown those sources are binding on this Court or the Agency. See, e.g., Shaibi v. Berryhill, 883 F.3d 1102, 1107 (9th Cir. 2017) ("POMS guidance is not binding either on the ALJ or on a reviewing court."); Wendei L. P., 2020 WL 433365 at *1 (vacating order reversing ALJ's decision because court erroneously relied on SkillTran job listing, which included more limitations than the DOT); Aragon, 2016 WL 1257785 at *3 (noting that private SkillTran

software program is not referenced in the list of published sources recognized as authoritative by Social Security regulations). At best, Plaintiff presents an alternate interpretation of transferability and resulting numbers of jobs available, which is insufficient to undermine the VE's testimony. See Shaibi, 883 F.3d at 1108 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." (internal quotation marks and citation omitted)); Aragon, 2016 WL 1257785 at *5 (collecting cases uniformly rejecting lay interpretation and analysis of SkillTran publication job numbers). Reversal is not warranted on this ground.[12]

## IV.
## ORDER

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

Dated: February 21, 2020

_____
JOHN D. EARLY
United States Magistrate Judge

---

[12] Having determined the Commissioner met his burden with the case aide position, the Court does not also consider whether a significant number of jobs existed for the other representative occupations.